## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RABIH HADDAD,**

      Plaintiff,

v.

**JOHN ASHCROFT**, as Attorney General of
the United States, **MICHAEL CREPPY**, as
Chief Immigration Judge of the United States,
and **ELIZABETH HACKER**, as United States
Immigration Judge,

      Defendants.

**02 - 70605**

U.S. District Court
Case No. PAUL D. BORMAN

MAGISTRATE JUDGE SCHEER

FILED

2002 FEB 14  P 3: 15

U.S. DISTRICT COURT CLERK
EASTERN MICHIGAN

_____/

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR RELIEF IN THE NATURE OF MANDAMUS

### INTRODUCTION

1.     Plaintiff Rabih Haddad ("Haddad") contests the Government's closure of

his proceedings in the United States Immigration Court to the press and public as a

violation of his rights under: (1) the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 551 *et seq.*; (2) the Immigration and Nationality Act ("INA"), as amended, 8 U.S.C.

§ 1229a, and the regulations promulgated thereunder, 8 C.F.R. §§ 3.27 & 240.10; and (3)

the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over the claims set forth in this

Complaint pursuant to 28 U.S.C. § 1331 (suit arising under federal law); 5 U.S.C. §§ 702,

703 and 706 (action to compel agency action unlawfully withheld); 28 U.S.C. § 1361

(action in the nature of mandamus to compel an officer or employee of the United States to perform a duty); and 28 U.S.C. § 2201 (declaratory judgment).

3.　　　Venue is proper in this District pursuant to 28 U.S.C. § 1391(e).  Plaintiff resides in this District, Judge Hacker's chambers are here, and the conduct giving rise to Haddad's claims occurred in this District.

## PARTIES

4.　　　Haddad, a native of Lebanon, had resided in Ann Arbor, Michigan since 1998.  (Ex. A ¶ 2.)[1]

5.　　　Since December 14, 2001, Haddad has been in the custody of the United States Immigration and Naturalization Service ("INS") for overstaying his visa.  (*Id.* ¶ 4.)  When Haddad was apprehended, applications for an extension of his visa and alien labor certification were pending.  (*Id.* ¶ 3.)

6.　　　Defendant Michael Creppy is sued only in his official capacity as the Chief Immigration Judge.  On September 21, 2001, he issued a memorandum ("the Creppy Memo") mandating that all United States Immigration Judges close immigration proceedings for certain persons identified by the Office of the Chief Immigration Judge.  (Ex. F at 1.)

7.　　　Defendant Elizabeth Hacker is sued only in her official capacity as a United States Immigration Judge.  Judge Hacker, to whom Haddad's case has been assigned, closed his bond determination and bond re-determination hearings, pursuant to the Creppy Memo.  (Ex. A ¶¶ 6-7, 10 & 13.)

---

[1] All referenced exhibits are attached to the Complaint as an "Appendix of Exhibits."

8.      Defendant John Aschroft is sued only in his official capacity as the Attorney General of the United States. Chief Immigration Judge Creppy issued the September 21, 2001 memo under Attorney General Ashcroft's authorization. Chief Immigration Judge Creppy, Judge Hacker, and all other Immigration Judges function under the Attorney General's authority and are part of the Executive Office of Immigration Review ("EOIR"), to which the Attorney General has delegated his authority over immigration and immigration trials. See 8 C.F.R. §§ 3.00-3.65.

## GENERAL ALLEGATIONS

9.      Haddad has lived off-and-on in the United States since 1980. (Ex. A ¶ 2.) He resides in Ann Arbor with his wife and their four children, one of whom was born here and is thus a citizen. (Id.) His brother is also a U.S. citizen. (Id.)

10.      Haddad, his wife, and their children most recently came to the United States in 1998 on six-month tourist visas and have applied with the Immigration and Naturalization Service ("INS") for extensions. (Id. ¶ 3.) On April 30, 2001, Haddad applied for alien labor certification, thereby making him eligible for adjustment to permanent residency status under the Legal Immigration Family Equity ("LIFE") Act, 8 U.S.C. § 1255 (2001) (permitting aliens who are of "nonimmigrant" status to apply for permanent resident status). (Id. ¶ 3; Ex. B at 1-2.) Haddad's wife and three non-citizen children are derivative beneficiaries of his alien labor certification application. (Ex. A ¶ 3.)

11.      The INS does not generally initiate deportation proceedings against aliens, who are eligible for an adjustment to permanent residency status under the LIFE Act (Ex.

B at 1-2), but in this case INS agents arrested Haddad in his home on December 14, 2001 and placed him in removal proceedings for overstaying his visa.  (Ex. A ¶ 4.)

12.     Haddad was detained in the Monroe County jail, on December 14, 2001, placed in solitary confinement about six days later, and has remained in federal custody ever since.  (*Id.*)

13.     Because Haddad was a prominent member of the community, his detention was reported in the local and national newspapers. See A Nation Challenged: Immigration; U.S. Holds Suspect With Ties to Group Linked to Terror Aid, New York Times, Dec. 18, 2001, at B6; INS Detains Muslim Man in Michigan, The Washington Post, Dec. 18, 2001, at A16; Niraj Warikoo, Local Muslim Leader's Jailing Draws Community Objections, Detroit Free Press, Dec. 18 2001, at 1A. Closed Hearings; Secrecy in Haddad's Case Serves Justice Poorly, Detroit Free Press, Jan. 30, 2002, at 8A; Open Up, The Washington Post, Feb. 7, 2002, at A24; A Nation Challenged: American Muslims, N.Y. Times, Jan. 3, 2002, 142002 WL 8715378; U.S. Judge Orders Charity's Founder Held Indefinitely, Chicago Trib., Jan. 3, 2002, at 8.

14.     On December 15, 2001, Haddad filed an application for bond with INS District Director Carol Jenifer.  (*Id.* ¶ 5.)  She did not respond.  (*Id.*)

15.     Haddad then filed a motion for a re-determination of bond with an Immigration Judge on December 17, 2001. (*Id.*; Ex. C.)

16.     On December 19, 2001, United States Immigration Judge Elizabeth Hacker presided over Haddad's bond hearing.  (*Id.* ¶ 6.)  Haddad's family, hundreds of his supporters, and numerous members of the press, including The Detroit Free Press, The Metro Times, and The Ann Arbor News, sought to attend the hearing.  (*Id.*)

17.     Shortly before the hearing began, courtroom security officers announced that the hearing was closed. (*Id*.) The officers ordered members of the public and press to vacate the lobby and hallway outside the courtroom. (*Id*.)

18.     Neither Haddad nor his counsel, Ashraf Nubani, were advised ahead of time that Judge Hacker would close the hearing. (*Id*. ¶ 7.) At the hearing, Mr. Nubani questioned the closing of the hearing, but Judge Hacker responded that the decision to close the proceedings came from her supervisors, and that she was powerless to reverse it. (*Id*.) Judge Hacker made no findings on the record as to why she was closing the proceedings. (*Id*. ¶ 8.)

19.     At the December 19th hearing, Haddad and his witnesses testified that he was neither a risk of flight nor a danger to the community (Ex. D at 1-3);[2] he also submitted six affidavits from his friends, over fifty letters of support, and petitions with hundreds of signatures. (Ex. C at 3; Ex. H at 2; Ex. I.) Judge Hacker continued the hearing to January 2, 2002 because the Government stated that its witnesses were unavailable. (*Id*. at 1; Ex. A ¶ 9.)

20.     Mr. Nubani objected again to the closure of the proceedings in a December 31, 2001 letter to Judge Hacker. (Ex. E; Ex. A ¶ 9.)

21.     When the proceedings resumed on January 2, 2002, Haddad's family, hundreds of his supporters, members of the press, and Rep. John Conyers, Jr. sought entrance, but Judge Hacker ordered that the courthouse be closed, again without any findings on the record as to why. (Ex. A ¶ 10.) Mr. Nubani again objected, but to no avail. (*Id*.)

---

[2] Each witness was present in the courtroom only for the duration of his or her testimony.

22. After the Government witnesses testified, Judge Hacker denied Haddad bond. (*Id.* ¶ 11.) In a January 29, 2002 Bond Memorandum and Order, she found that the INS presented no evidence that Haddad was a threat to national security. (Ex. D at 5.) Judge Hacker found, however, that Haddad is a risk of flight. (*Id.*)

23. A few days after the January 2nd hearing, Mr. Nubani received by fax a partial copy of a September 21, 2001 memo from Chief IJ Michael Creppy (the "Creppy Memo"), requiring all Immigration Judges to close immigration proceedings for certain aliens, upon separate notification from the Office of Chief Immigration Judge ("OCIJ"). (Ex. F at 1; Ex. A ¶ 12.) The Creppy Memo was not published in the Federal Register.

24. The Creppy Memo also stated, "If any of these cases are filed in your court, you will be notified by OCIJ that special procedures are to be implemented. A more detailed set of instructions will be forwarded at that time to the judge handling the case and the court administrator." (Ex. F. at 1.)

25. For any case identified by the Government, pursuant to the Creppy Memo, the memo provides that the entire proceedings must be closed – "no visitors, no family, and no press." (*Id.*) The memo does not provide for any particularized inquiry into whether limited closure might protect sensitive information or other concerns, but requires closure of every aspect of the proceedings, no matter how routine. (*Id.*) The memo further instructs the Immigration Judges not to list the cases on the docket, and neither to confirm nor to deny that the cases exist if asked. (*Id.*)

26. Under the Creppy Memo, no protective order barred Haddad or his counsel from disclosing what transpired after the fact and to the best of their recollection.

27.     The Government did not present classified information at any of Haddad's hearings.  (Ex. A ¶ 14.)

28.     Upon information and belief, the Government has invoked these "closure" procedures for every aspect of over 700 immigration cases instituted since September 11, 2001, including over 300 detainees who have since been cleared of any involvement or connection to terrorism.  (Ex. G.)

29.     On January 10, 2001, Haddad and his counsel appeared at the Master Calendar Hearing, which Judge Hacker again closed.  (Ex. A ¶ 13.)  Mr. Nubani requested a hearing on whether the proceeding should be closed and also inquired about the Creppy Memo.  (*Id.*)  Judge Hacker admitted that she was denying the request for an open hearing, and that she had no discretion to open the proceedings, pursuant to the Creppy Memo.  (*Id.*)  Judge Hacker offered no further explanation as to why the proceedings were closed.  (*Id.*)  Mr. Nubani then requested a re-determination of Haddad's bond, which Judge Hacker denied.  (*Id.*)

30.     Throughout these closed proceedings, Judge Hacker imposed no limitations on Haddad or Mr. Nubani to relate or describe the content of the proceedings to anyone, including members of the press.  (*Id.* ¶ 14.)  No classified information was presented at any time during the immigration hearings. (*Id.* ¶ 14.)

31.     On or about January 2, 2002, Haddad was transferred to Chicago to testify in a grand jury proceeding, and he is no longer in the custody of the INS.  (*Id.* ¶ 15.)  His immigration case has accordingly been administratively closed (*i.e.*, stayed), pending completion of his testimony, and he remains in federal custody solely pursuant to his immigration violation. (*Id.*)

**COUNT I     VIOLATION OF ADMINISTRATIVE PROCEDURAL ACT ("APA") NOTICE AND COMMENT RULEMAKING REQUIREMENTS**

32.     Plaintiff re-alleges and incorporates by reference herein the allegations of Paragraphs 1 through 31 of this Complaint.

33.     The Government's adoption and enforcement of the Creppy Memo's closure procedures has the force and effect of an administrative rule.  5 U.S.C. § 551.

34.     Chief Immigration Judge Creppy and Attorney General Ashcroft did not comply with the notice and comment rulemaking requirements of the APA in issuing the Creppy Memo.  5 U.S.C. § 553(b).

**COUNT II     VIOLATION OF PLAINTIFF'S RIGHTS UNDER IMMIGRATION AND NATURALIZATION ACT AND REGULATIONS, 8 C.F.R. §§ 3.27 & 240.10**

35.     Plaintiff re-alleges and incorporates by reference herein the allegations of Paragraphs 1 through 31 of this Complaint.

36.     The Government's blanket closure of Haddad's immigration hearings, pursuant to the Creppy Memo, which substituted the discretion of the Attorney General and the Chief Immigration Judge for the discretion of U.S. Immigration Judges with respect to the opening and closing of immigration proceedings, was *ultra vires*, in violation of the INA, as amended, 8 U.S.C. 1229a, and the regulations promulgated thereunder, 8 C.F.R. §§ 3.27 & 240.10.

**COUNT III     VIOLATION OF PLAINTIFF'S FIFTH AMENDMENT DUE PROCESS RIGHT TO OPEN AND PUBLIC IMMIGRATION PROCEEDINGS**

37.     Plaintiff re-alleges and incorporates by reference herein the allegations of Paragraphs 1 through 31 of this Complaint.

38.     The Fifth Amendment to the U.S. Constitution states that no person shall be deprived of life, liberty, or property without due process of law. The Fifth Amendment confers the right to open and public hearings that concern the deprivation of liberty. Haddad has a liberty interest in his bond re-determination hearing and any future immigration proceedings, including his removal proceeding.

39.     The Government's decision to close Haddad's immigration proceedings to the press and public, pursuant to the Creppy Memo, was not "the most limited action necessary to sufficiently protect the interest perceived to be paramount to the interest of the public in an open hearing." *Pechter* v. *Lyons*, 441 F.Supp. 115, 119-20 (S.D.N.Y. 1977).

40.     The Government abrogated Haddad's due process right to open and public immigration proceedings by closing the entirety of his bond re-determination hearings.

## COUNT IV    VIOLATION OF PLAINTIFF'S FIFTH AMENDMENT DUE PROCESS RIGHT TO CHALLENGE CLOSURE DECISION ITSELF

41.     Plaintiff re-alleges and incorporates by reference herein the allegations of Paragraphs 1 through 31 of this Complaint.

42.     The Fifth Amendment of the U.S. Constitution states that no person shall be deprived of life, liberty, or property without due process of law.  The Fifth Amendment confers the right to a meaningful opportunity to be heard regarding the Government's decision to close immigration proceedings.

43.     The Government's secret decision to close Haddad's immigration proceedings, based upon undisclosed criteria and information, deprived Haddad of any opportunity to challenge the decision.

44.     The Government abrogated Haddad's due process right to challenge the closure of his immigration proceedings by closing the hearings on the basis of a memo that the Government never published, and on the basis of criteria and information that the Government has not disclosed.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests this Court to grant the following relief:

A.     Adjudge and declare that the unpublished Creppy Memo has the force and effect of an administrative rule under 5 U.S.C. § 551, and that Attorney General Ashcroft and Chief Immigration Judge Creppy failed to comply with the notice and comment rulemaking requirements, with regard to the issuance of the Creppy Memo; thereby violating Haddad's rights under the APA.  5 U.S.C. § 553(b).

B.     Adjudge and declare that the Government's closure of Haddad's immigration proceedings, pursuant to the Creppy Memo, exceeded the scope of, and therefore violated, 8 U.S.C. § 1229a and 8 C.F.R. §§ 3.27 & 240.10.

C.     Adjudge and declare that the Government's closure of Haddad's immigration proceedings without notice, without making any particularized findings, and without tailoring the closure to a compelling government interest violates his Fifth Amendment due process right to open and public immigration proceedings.

D.     Adjudge and declare that the Government's closure of Haddad's immigration proceedings, based on undisclosed information and without providing Haddad an opportunity to be heard regarding the grounds for that decision violated his Fifth Amendment due process right to have a meaningful opportunity to challenge the closing of his proceedings.

E.      Enter an order in the nature of a preliminary and permanent injunction or mandamus compelling the Government to:

1.      Reassign Haddad's case to another Immigration Judge.

2.      Order the newly assigned Immigration Judge to hold a new bond re-determination hearing for Haddad that is open to the press and the public, subject to a particularized showing that there is a compelling need to close aspects of the proceedings, and that any such closure is narrowly tailored to that need.

3.      Order the newly assigned Immigration Judge to hold a hearing as to whether the new bond re-determination hearing and any other immigration proceedings should be closed, subject to a particularized showing that there is a compelling need to close aspects of the proceedings, and that any such closure is narrowly tailored to that need.

4.      Order the newly assigned Immigration Judge to provide particularized findings on the record, setting forth reasons justifying closure, in the event that the Immigration Judge closes any part of his immigration proceedings on remand.

F.      Award plaintiff costs, fees, and expenses to the extent allowed under 28 U.S.C. § 2412; and

G.      Award such other relief as this Court deems just and proper.

Respectfully submitted, this February 13, 2002

GLEICHER & PATEK, P.C.

By:     _____
        Elizabeth Gleicher (ID No. P30369)
        1500 Buhl Building
        Detroit, MI 48226
        313-964-6900

11

and

ARNOLD & PORTER
    Jonathan Martel
    Christopher Winters
    555 Twelfth Street, NW
    Washington, DC  20004
    202-942-5000

CENTER FOR CONSTITUTIONAL
    RIGHTS
    Nancy Chang
    William H. Goodman
    Shayana D. Kadidal,
    Cooperating Attorney
    666 Broadway, 7th Floor
    New York, NY  10012-2317
    212-614-6420

    David Cole
    c/o Georgetown Law Center
    60 New Jersey Avenue, NW
    Washington, DC  20001
    202-662-9078

HICKS, HADEED & BECKER, PC
    Ashraf Nubani
    5501 Backlick Road
    Springfield, VA  22151
    (703) 333-3223

Counsel for Plaintiff, Rabih Haddad

CENTER FOR CONSTITUTIONAL RIGHTS
Nancy Chang
William H. Goodman
Shayana D. Kadidal, Cooperating
   Attorney
666 Broadway, 7th Floor
New York, NY  10012-2317
212-614-6420

David Cole
c/o Georgetown Law Center
600 New Jersey Avenue, NW
Washington, DC  20001
202-662-9078

HICKS, HADEED & BECKER, PC
Ashraf Nubani
5501 Backlick Road
Springfield, VA  22151
(703) 333-3223

Counsel for Plaintiff, Rabih Haddad